# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTINA PINKSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:15-cv-03433-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Christine Pinkston ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The administrative law judge ("ALJ") found Plaintiff had multiple severe impairments, including lumbar spine degenerative disc disease, obesity, borderline personality disorder, panic disorder with agoraphobia, polysubstance abuse, dependent personality disorder, schizoid personality disorder, depression, and bipolar affective disorder, but retained the residual functional capacity to perform work as a production assembler and wiper/cleaner.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending applications on April 22, 2013, alleging a disability onset date of January 25, 2012. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. On June 24, 2014, the ALJ held a hearing and on September 25, 2014, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on August 18, 2015, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**Discussion**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or

reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues that the ALJ failed to give her treating physician's opinion controlling weight when formulating her residual function capacity at step four, and thus the record contains insufficient evidence to support the Commissioner's decision.[2]

"[A] treating physician's opinion is generally entitled to substantial weight; however, such an opinion does not automatically control in the face of other credible evidence on the record that detracts from that opinion." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (internal quotations and citation omitted). "Moreover, an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Id.* "An ALJ may justifiably discount a treating physician's opinion when that opinion is inconsistent with the physician's clinical treatment notes" or when the physician's "opinions are inconsistent or contrary to the medical evidence as a whole." *Id.* Whatever weight the ALJ decides to give a physician's opinion, he must "always give good reasons." 20 C.F.R. § 416.927(c)(2).

Here, the ALJ gave the opinion of Plaintiff's treating physician, Angela Olomon, D.O. ("Dr. Olomon"), little weight because her findings were not supported by her own treatment notes and were inconsistent with the medical record as a whole. R. at 17-18. Plaintiff cites to

---

medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] Plaintiff also argues that her Global Assessment of Functioning ("GAF") scores do not support the ALJ's decision. As discussed below, the Court finds that substantial evidence supports the ALJ's decision. The fact that Plaintiff's GAF scores may point to a different outcome does not warrant reversal. *Buckner*, 646 F.3d at 556.

Dr. Olomon's check-box form that indicates Plaintiff is "extremely limited"[3] in multiple areas, including: the ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to respond appropriately to changes in the work setting; the ability to make plans independently of others; and the ability to work in coordination with or proximity to others without being distracted by them. R. at 591-92. She also found that Plaintiff was "markedly limited"[4] in several areas, including: the ability to understand and remember very short and simple instructions; the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to ask simple questions or request assistance; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.[5] R. at 591-92. But, on multiple other occasions, Dr. Olomon reported that Plaintiff had good grooming and hygiene, normal thought content, good judgment and memory, and normal attention, concentration, and knowledge. *See, e.g.*, R. at 597-98, 605, 613, 625. While Dr. Olomon did note that Plaintiff was anxious and dysphoric—notes that *are* consistent with some of the check-box form findings—substantial evidence supports the ALJ's finding that the check-box form was inconsistent with Dr. Olomon's overall treatment notes. Thus, the Court finds that the ALJ did not err in discounting Dr. Olomon's opinion for this reason. *See Gregor v. Colvin*, 628 F. App'x 462, 463

---

[3] The form defines "extremely limited" to mean an impairment level that precludes useful functioning in this category, considered to be 3 standard deviations below the norm, or 90% overall reduction in performance. R. at 591.

[4] The form defines "markedly limited" to mean "[m]ore than [m]oderate, but less than extreme resulting in limitations that seriously interfere[] with the ability to function independently, [c]onsidered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 591.

[5] Another of Plaintiff's treating providers, Kathryn Findley, Psy.D. ("Dr. Findley"), filled out the same check-box form. There are several inconsistencies between these two forms. For example, Dr. Findley indicated that Plaintiff was only "mildly limited" in the following areas: the ability to sustain an ordinary routine without special supervision; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; and the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. at 589. These findings were inconsistent with the more severe limitations indicated on Dr. Olomon's check-box form.

4

(8th Cir. 2016) (finding that report from treating physician did not undermine ALJ determination "because it was a conclusory checkbox form that cited no medical evidence; provided little to no elaboration; and expressed limitations that were not reflected in treatment notes or medical records") (citing *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012) (holding conclusory checkbox form has little evidentiary value when it provides little or no elaboration and cites no medical evidence)).

After rejecting treating physician Dr. Olomon's opinion, the ALJ relied on the opinion of consultative examiner Richard Frederick, Ph.D. ("Dr. Frederick"). Plaintiff argues the assignment of great weight to a one-time examining physician opinion was in error.

"When onetime consultants dispute a treating physician's opinion, the ALJ must resolve the conflict between those opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). An ALJ may resolve the conflict in the consultant's favor when his opinion is "supported by better or more thorough evidence." *Id.* (internal quotation marks omitted).

Here, Dr. Frederick provided a thorough, detailed analysis supporting his findings. *See* R. at 345-48. He reported that Plaintiff was: "casually attired with adequate hygiene"; "alert and fully oriented"; "amiable and well-mannered"; and "not . . . overtly anxious." R. at 347. She also appeared able to: understand, remember, and carry out complex instructions; concentrate, persist, and keep pace on complex tasks; interact effectively in complex work situations; adapt to changes in complex work situations; and manage her own funds. R. at 348. Though Dr. Frederick did not have the opportunity to review Plaintiff's treating physician records,[6] the above-discussed treatment notes from Dr. Oloman ultimately support Dr. Frederick's conclusions. Because Dr. Frederick explained the basis for his limitation assessment in more

---

[6] It appears Dr. Frederick's consultative examination occurred a few months prior to the creation of Dr. Oloman's reports.

detail than Dr. Oloman, and Dr. Oloman's treatment notes ultimately support his findings, the ALJ did not err in assigning great weight to Dr. Frederick's consulting medical opinion.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:   November 15, 2016                  /s/ Greg Kays
                                          GREG KAYS, CHIEF JUDGE
                                          UNITED STATES DISTRICT COURT